IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00114-LTB-MEH

MACK W. THOMAS,

      Applicant,

v.

JOE ORTIZ, Executive Director of D.O.C., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## RECOMMENDATION FOR DISMISSAL

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Applicant has pending before this Court an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") [docket #3]. Respondents have filed their Answer [docket #21], and Applicant has filed his Traverse [docket #23]. Under the provisions of 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, this matter has been referred to me for recommendation on dispositive matters and for ruling on nondispositive matters. Based on the record contained herein, I RECOMMEND that the Application be **denied** and that this matter be dismissed with prejudice.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or

## BACKGROUND

At the time he filed the within Application, the Applicant was a state parolee in Colorado who, proceeding *pro se*, challenges his 1997 state court conviction in the Boulder County District Court. The trial[2] took place in February and March 1997, during which the Applicant was represented by Steve Jacobson and Yasmin Forouzandeh. Applicant was convicted of two counts of sexual assault on two children [referred to herein as J.P. and L.T.] and sentenced to sixteen years incarceration and lifetime probation. In July 1997, Applicant, through counsel Kathleen Lord, filed a direct appeal of his conviction to the Colorado Court of Appeals. In April 1998, that court granted counsel's motion to withdraw and appointed Ronald Beeks to represent Applicant for his appeal. In August 1998, the court granted Applicant's request for a limited remand for the purpose of filing a motion under Colo. R. Crim. P. 35(c) alleging claims of ineffective assistance of counsel, prosecutorial misconduct and judicial misconduct.

Applicant filed his Rule 35(c) Motion to Vacate Judgment on August 14, 1998. For the remand, the trial court first appointed Daniel Edwards to represent Applicant, who withdrew after a short time for health reasons. Thereafter, the trial court appointed Russel Ray as counsel in May 1999; after a few months, Applicant moved for Mr. Ray's withdrawal. In October 1999, Harvey

---

adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

[2]This is the second trial on the same charges; the first trial took place in 1985 at which Applicant was convicted and sentenced to ten years incarceration. On direct appeal, the conviction was reversed, but later reinstated by the Colorado Supreme Court. On post-conviction motion filed in 1992, Applicant alleged ineffective assistance of trial counsel; the motion was denied, but reversed and remanded by the Colorado Supreme Court, and in June 1994, the Applicant was granted a new trial. The state appealed the order and in September 1996, the Colorado Court of Appeals affirmed the order for a new trial.

Steinberg entered his appearance in place of Mr. Ray.  A year later, in November 2000, Rowe Stayton entered his appearance as Applicant's counsel for the remainder of the limited remand (although the record indicates that the Applicant filed a motion for "conflict-free counsel" on January 31, 2002, alleging that Mr. Stayton did not represent him effectively).

In May 2002, after approximately three years and nine months on remand, the court of appeals granted the government's motion to vacate the remand and restored jurisdiction for the direct appeal to proceed.  In February 2003, the court of appeals granted Mr. Beeks' motion to withdraw and allowed Applicant to proceed *pro se*; at the same time, the court set a 40-day deadline for filing the opening brief.  However, in April 2003, the Applicant filed a motion to dismiss the appeal, which the court granted with prejudice and with the understanding that Applicant would never be able to file another direct appeal of his conviction and sentence.

Thereafter, the Applicant, *pro se*, filed a number of post-conviction motions, including "renewed" and "supplemental" motions under Colo. R. Crim. P. 35(c) and a motion for correction of an illegal sentence pursuant to Colo. R. Crim. P. 35(a).  In his Rule 35(c) motions, Applicant incorporated by reference his original Rule 35(c) motion alleging ineffective assistance of trial counsel (Jacobson), prosecutorial misconduct and judicial misconduct, and added claims of ineffective assistance of appellate counsel (Beeks) and post-conviction counsel (Stayton).  On December 22, 2003, the trial court entered an order denying the Rule 35(a) motion for correction of illegal sentence, finding that Applicant's sentence came within the statutorily authorized range. The trial court also denied the "renewed" and "supplemental" Rule 35(c) motions finding that Applicant failed to present a sufficient basis or evidence for his position regarding a "conspiracy" among his previous counsel, the prosecutor and the judge.

3

Applicant filed a timely notice of appeal, but the court of appeals ordered that the appeal be limited only to the December 22, 2003 order and not to any issues raised in the direct appeal (97CA883).  On May 25, 2006, the court of appeals affirmed the trial court's order by specifically rejecting Applicant's claims of ineffective assistance of [limited remand] counsel, ineffective assistance of trial counsel and vindictive sentencing, and declining to hear claims regarding juror misconduct and expert testimony, which were not raised in the post-conviction motions.  Applicant filed a petition for certiorari in the Colorado Supreme Court raising these and other claims, but the court denied certiorari on January 2, 2007.

## PROCEDURAL HISTORY

On January 17, 2007, the Applicant filed his Application in this Court, seeking federal habeas relief.  Applicant asserts generally four claims for relief as follows:

> **Claim One**: Applicant received ineffective assistance of counsel at trial, on direct appeal and during post-conviction proceedings in violation of the Sixth and Fourteenth Amendments.

> **Claim Two**: Applicant has been unconstitutionally detained due to state actions of erroneously ignoring meritorious facts of innocence, malicious prosecution, and intentional appointment of unethical appellate counsel in violation of Applicant's Sixth and Fourteenth Amendment rights.

> **Claim Three**: Applicant's right to due process under the Fourteenth Amendment was violated when state district court judge Carol Glowinsky appointed Russel Ray who refused to present a claim of ineffective assistance of counsel against his friend, trial counsel Steve Jacobson.

> **Claim Four**: Applicant's rights to confront witnesses and to due process were denied at his 1997 trial when the state district court determined that a minor child was unavailable to testify.

Petition at 5, 40, 54; *see also* Answer to Federal Habeas Application, docket #21, pp. 20-21.

In their Answer to the allegations made in the Application, the Respondents argue that the

Applicant has not exhausted state court remedies with regard to certain claims.   Respondents contend that, although "most of the claims in [Applicant's] Colo. Crim. P. 35(c) post-conviction motions were presented to the Colorado Supreme Court,"[3] the federal exhaustion requirements have not been satisfied with regard to portions of Claim 2 ("malicious prosecution" allegation) and to Claim 4, because these matters were never properly presented on appeal to the Colorado Court of Appeals or Supreme Court.   Answer, docket #21, at 24.   Respondents assert that, based on state procedural bars which would prevent the Applicant from filing those claims now, there is no available state court remedy and, therefore, the claims are technically exhausted; however, this Court is precluded from their review on the merits.   *Id.*   Nevertheless, the Respondents argue that all of Applicant's claims fail on their merits.   *Id.*

Applicant filed a Traverse on April 9, 2007; subsequently, he filed a motion to supplement his application on December 10, 2007, which was fully briefed and which the Court denied on February 29, 2008.   On June 6, 2008, this Court issued an order directing the Clerk of the Boulder County District Court to supply the state court record for this Court's full review of the matter.   The Clerk responded that the record had been sent to the Colorado Court of Appeals for Applicant's pending appeal (of an order on another post-conviction motion) there.   This Court held a status conference on July 29, 2008, informing the parties of the need for a copy of the record; Applicant stated that he would dismiss his appeal so that the record could be returned and delivered to this Court.

Thereafter, Applicant provided to the Court an index of the record filed with the Court of

---

[3]Unfortunately, the Respondents do not articulate which of Petitioner's particular claims they believe were presented to the Colorado Supreme Court.

Appeals on July 2, 2008, along with a copy of his request for dismissal of that appeal.  Docket #49.

In their status report filed August 4, 2008, Respondents estimated that the time needed for dismissal

and return of the record to be one month; therefore, on September 4, 2008, this Court issued a

second order directing the Clerk of the Boulder County District Court to supply the state court

record, for the time period April 2003 through December 2003, for this Court's review of the matter.

Apparently, the Clerk did not receive the September 4, 2008 order; therefore, this Court issued an

identical order on October 23, 2008.  On January 9, 2009, the Court received a single envelope of

documents.  Upon review of the supplied record, the Court determined that copies of additional

documents from the record were needed; therefore, on February 4, 2009, this Court issued a fourth

order to the Boulder County Clerk requesting all documents filed from February 1997 through April

2003.  On February 10, 2009, the Court received another batch of documents from Boulder County;

upon review of the documents, the Court found that the batch included only documents dating from

February 1997 through July 1997, as well as the same documents previously submitted dated

between April 2003 and December 2003.

Therefore, on March 24, 2009, the Court issued a fifth order to the Boulder County Clerk

requesting all documents filed from July 1997 through April 2003.  On April 16, 2009, Boulder

County notified the Court that it had produced all documents in its possession for the requested time

period.  When this Court requested clarification as to whether hearing transcripts (noted on the state

court's docket) were part of the court's search, Boulder County informed the Court that transcript

copies could be produced otherwise.  Therefore, on April 22, 2009, the Court received copies of

requested transcripts from November 2001 and December 2001 hearings.  Thereafter, on April 30,

2009, the Court ordered that the parties produce a copy of a document that was missing from the

record and had not been attached to any pleadings in this case, but which was needed for review. On May 4, 2009, Applicant provided a copy of the document. The Court continued its review of the matter and on September 18, 2009, ordered that Boulder County produce additional transcript copies that it may have in its possession. On October 21, 2009, Boulder County provided copies of the trial transcripts for February 18, 1997 through March 5, 1997, excluding the February 20, 1997, and February 27, 1997, transcripts, as well as excluding the requested hearing transcripts. Through further investigation, the Court requested the missing transcript copies from Boulder County and, on December 9, 2009, received the remaining transcripts. At that point, the matter became ripe for consideration.

## DISCUSSION

Applicant proceeds in this action *pro se*. As a *pro se* litigant, Applicant's filings are entitled to liberal construction by this Court. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110.

## I.     Standard of Review

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254, it must decide whether the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' The court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (citations omitted). Here, the Applicant is serving lifetime probation for the challenged conviction; therefore,

7

he is "in custody" for purposes of his habeas application.  *See Olson v. Hart*, 965 F.2d 940, 942-43 (10th Cir. 1992).

Before filing a federal habeas application, a state prisoner must first exhaust his state remedies by "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Accordingly, based on denial of certiorari review by the Colorado Supreme Court in the post-conviction attempt made by the Applicant, habeas review in this Court is concerned with the proceedings in the Colorado Court of Appeals which was the final substantive proceeding in the state appellate review process.

This case is also governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  The AEDPA applies to all federal habeas applications filed after the AEDPA's effective date of April 24, 1996, regardless of when the state proceedings occurred.  *Trice v. Ward*, 196 F.3d 1151, 1158 (10th Cir. 1999).  Under the AEDPA, a Petitioner is entitled to federal habeas relief only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); *see also House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

As the Supreme Court stated:

A state-court decision is contrary to . . . clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result.  A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*,  544 U.S. 133, 141 (2005) (internal citations omitted); *see also Taylor v. Workman*, 554 F.3d 879, 887 (10th Cir. 2009).  The first inquiry is whether the clearly established federal law exists on the issue; only once this is established must the Court determine whether the state court's application of such law is objectively unreasonable.  *House*, 527 F.3d at 1018 (citing *Carey v. Musladin*, 549 U.S. 70 (2006)) ("The absence of clearly established federal law is dispositive under § 2254(d)(1)").  "The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

The state court need not cite to Supreme Court cases in reaching its decision, provided that "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).  Accordingly, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the Petitioner as the federal standard, this Court may presume an adjudication on the merits and apply AEDPA deference. *Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993), the harmless error standard of *Brecht* must be applied. *Herrera v. Lemaster*, 301 F.3d 1192, 1200 (10th Cir. 2002).  Under *Brecht,* habeas relief is not proper unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623.  This requires more than just an incorrect application of federal law, requiring instead a showing "somewhere between clearly erroneous and unreasonable to all reasonable jurists."

9

*Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006).   Thus, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."   *Id.* at 671.

Factual findings made by the state trial and appellate courts are presumed correct, with the petitioner bearing the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003).  The burden remains, because "whether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it."  *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

According to the Tenth Circuit, this Court "owe[s] deference to the state court's *result,* even if its reasoning is not expressly stated." *Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."  *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims."  *Id.*

Finally, if the state court does not address a claim on the merits, this Court must review the claim de novo and the deferential standards in 28 U.S.C. § 2254(d) are not applicable.  *See Gipson v. Jordan,* 376 F.3d 1193, 1196 (10th Cir. 2004).

## II.      Timeliness of the Application and Exhaustion

As acknowledged by Respondents, and reviewed by the Court, Applicant filed his application within the one-year time limit prescribed by AEDPA. 28 U.S.C. § 2244(d).  With regard to Applicant's Claims 2 and 4, however, the Respondents argue that the "malicious prosecution"

allegation of Claim 2 and the "right to confront witnesses" and due process allegations of Claim 4, which were raised in Applicant's direct appeal but voluntarily dismissed, have not been properly presented to the state courts and are, therefore, procedurally defaulted.  Answer at 24.  Applicant disputes this argument asserting that he raised the allegations in his appellate opening brief, reply brief, and in his "Supreme Court Brief."  *See* Traverse to Answer, docket #23, at 37.

Exhaustion of available and adequate state court remedies is a prerequisite to a habeas corpus application in federal court.  *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987) (citing *Rose v. Lundy*, 455 U.S. 509 (1982)); 28 U.S.C. § 2254(b).

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'"  *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 120 L.Ed.2d 865 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).  To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim to each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (some citations omitted).

"Fair presentation of a prisoner's claim to the state courts means that the substance of the claim must be raised there."  *Patton v. Mullin*, 425 F.3d 788, 809 n.7 (10th Cir. 2005); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) (the state court must be given the first opportunity to resolve constitutional matters arising from its proceedings).   The Applicant must "provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

This case has involved numerous proceedings including two trials, direct appeals and post-conviction proceedings over the course of 22 years (1985-2007); therefore, the Court finds it

necessary at this stage to identify exactly which claims are properly before this Court.  The parties

do not dispute that the Colorado Court of Appeals narrowed its review only to those issues raised

in Applicant's post-conviction proceedings stemming from his 1997 conviction, and not to any

issues raised on direct appeal from the 1997 conviction.  Docket #21-13 at 7.  Therefore, the Court

must first identify whether the claims brought by Applicant in this action were raised on direct

appeal or during post-conviction proceedings.[4]

According to the record, there is no evidence of briefing filed by the parties during the direct

appeal following the 1997 conviction;[5] therefore, this Court looks to Applicant's Notice of Appeal

to identify the issues raised for review: "All issues raised in the Motion for New Trial (attached

hereto), sufficiency of the evidence, sentencing, and any other issues Appellant chooses to raise as

plain error."  Boulder District Court record, 1997 - 2003 Original Documents, at 470.  The attached

Motion for New Trial reflects only allegations that two jurors who had prior knowledge of

Applicant's 1985 trial did not disclose such information in the juror questionnaire.  *Id.* at 472-73.

The specific issues raised during remand and post-conviction proceedings appear in

Applicant's original Motion to Vacate Judgment pursuant to Colo. R. Crim. P. 35(c) filed August

---

[4]The Court notes at this point that, due to the difficulties in obtaining the record in this matter, the Court was required to reconstruct much of the written record including motions and pleadings filed following the 1997 trial and during the remand period.  Unfortunately, some of these documents are not marked by Bates numbers or otherwise; therefore, citations to the record may be inconsistent in some respects.  However, the Court will endeavor to cite to a document or transcript with as much detail as possible.

[5]In fact, after the remand was vacated and the appeal allowed to proceed, the Colorado Court of Appeals ordered that an opening brief be filed within 40 days of the February 13, 2003 order; however, nothing was filed within that time period and, on April 25, 2003, the Applicant moved to dismiss the appeal.

14, 1998, his supplemental argument filed November 21, 2000,[6] his Renewed Motion Pursuant to 35(c) filed May 2, 2003 (after the direct appeal was dismissed), his Motion to Correct Illegal Sentence pursuant to Colo. R. Crim. P. 35(a) filed May 2, 2003, and his Supplemental Motion Pursuant to 35(c) filed June 30, 2003.[7]   The August 14, 1998 Motion to Vacate Judgment alleges that Applicant's conviction was obtained in violation of his rights to effective legal representation and to due process through judicial and prosecutorial misconduct.   Essentially, Applicant contends that trial counsel (Jacobson) refused to impeach "perjured" testimony, failed to properly cross-examine witnesses, refused to ask the judge to recuse himself based on alleged knowledge of juror misconduct, and refused to present a defense that a ten-year-old-boy was the perpetrator of the crime for which the Applicant was charged.   In addition, Applicant argues in his motion that the prosecution coached witnesses to commit perjury and leaked information to the press that would have been inadmissible at trial, thus improperly influencing the jury.   Finally, Applicant asserts that the 1997 trial judge (McLean) was "a very close friend" of the 1985 trial judge (Sandstead) who participated "behind the scenes" with Judge Sandstead at the original trial, that Judge McLean told defense counsel he "hates [Applicant's] guts," and that Judge McLean refused to "get on record" the admission of a juror who had knowledge of the original trial.

On November 21, 2000, Applicant (through counsel) filed a "Supplemental Argument in Support of Crim. P. 35 Motion."   Essentially, the motion argues that Applicant was denied due

---

[6]During a November 2001 hearing, the Applicant formally withdrew all other motions previously filed during the remand period.   *See* November 8, 2001 Hearing Transcript at 8.

[7]Although Applicant refers to a "number" of other motions filed during remand and post-conviction, these were the only motions that appear to be addressed by the post-conviction court in its December 2003 order and by the appellate court in its May 2006 opinion.

process in the enhanced sentence he received during the 1997 trial (16 years incarceration and lifetime probation versus 10 years incarceration from the 1985 conviction). The Applicant concedes in the motion that his argument is also cognizable pursuant to Colo. R. Crim P. 35(a).

On December 14, 2001, the trial court denied the Supplemental Argument concluding that Judge McLean's findings were proper and the enhanced sentence was justified.

In Applicant's renewed Rule 35(c) motion filed May 2, 2003, Applicant incorporates his original Rule 35(c) motion[8] and contends that the remand court's refusal to hold hearings regarding his ineffective assistance claims involving Russel Ray[9] and Rowe Stayton caused excessive delays and obstruction of justice. In the supplemental Rule 35(c) motion, Applicant incorporates his allegations of deficient performance regarding remand counsel (Stayton) from a previously filed motion (January 2002) to assert ineffective assistance claims against Stayton, and contends that appellate counsel (Beeks) was ineffective in refusing to inform, or file motions with, the court of appeals regarding Applicant's allegations of ineffective assistance of remand counsel. Applicant contends that Beeks' refusal denied Applicant access to the court of appeals for review of remand counsel's actions.

In the Applicant's Rule 35(a) motion seeking to correct an illegal sentence, he first contends that the supplemental 35(c) motion filed in November 2000 was filed prematurely without proper

---

[8]Applicant refers to other motions filed during remand as well; however, as stated above, Applicant withdrew such motions during the November 11, 2001 hearing. Applicant also refers to a motion for change of judge and change of venue filed contemporaneously with his renewed 35(c) motion; however, Applicant does not claim that his constitutional rights were violated in that motion.

[9]Although Applicant appears to raise ineffective assistance of counsel claims against Mr. Ray in his Application, the Court has found nothing in the record indicating that Applicant asserted ineffective assistance of counsel claims against Mr. Ray in state court proceedings.

14

investigation.  Applicant also argues that the trial judge improperly based the enhanced sentence on factors that were not part of the record nor introduced as evidence during the trial.

After Applicant's post-conviction motions were summarily denied on December 22, 2003, the court of appeals limited his appeal on the post-conviction motions "to the district court's order of December 22, 2003, and not to any issues from [the prior direct appeal]."  Docket #3 at 69.  The December 22 order addresses only the questions of whether to correct Applicant's sentence under Fed. R. Crim. P. 35(a) and whether Applicant could prove a "conspiracy" amongst the court, the prosecution and defense counsel (apparently, the court construed Applicant's post-conviction motions as alleging a conspiracy).  *Id.* at 63.  The court of appeals distinguished any "conspiracy" allegations from the allegations regarding ineffective assistance of counsel and, in affirming the trial court, addressed only the claims involving ineffective assistance of trial counsel, ineffective assistance of post-conviction counsel, and vindictive sentence.  *See* doc. #21-13.  The Colorado Supreme Court denied Applicant's petition for writ of certiorari.

Here, construing the Applicant's pleading liberally as I must,[10] I find that the majority of Claim 1 for ineffective assistance of trial, appellate and post-conviction counsel encompasses issues raised during post-conviction proceedings and are exhausted.  For example, Applicant alleges in the following "sub-claims" that trial counsel (1) "refused to produce exonerating evidence" at trial that minor child "MF" made false allegations of sexual assault against Applicant [docket #3 at 11-14];

_____

[10]The Court must note here that Applicant's 61-page application (along with more than 400 pages of attachments) is disorganized, disjointed, difficult to discern (in some instances) and fraught with incomplete sentences and vague references to unattached documents and to the state court record dating back to his original trial in 1985.  It is the Applicant's burden to direct the Court to any evidence supporting his claim(s) by making specific references to the record.  *See Securities & Exchange Comm'n v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992) (noting that Court is not obligated to sift through a record to find support for a party's case).

(2) failed to produce minor child "MD" as a witness at trial, who would allegedly testify as to MF's participation in "sexual games" [*id.* at 15-16]; (3) failed to ask MF questions on cross examination that would "reveal his guilt" [*id.* at 16-17]; (4) failed to apprise the defense expert witness (Holida Wakefield) of MF's false allegations and "guilt," and retained such expert knowing that she could be "attacked" successfully on cross examination [*id.* at 17-18]; (5) refused to impeach a prosecution witness (Polly Mahoney) with conflicting testimony from the 1986 trial [*id.* at 19-21]; (6) failed to impeach the prosecution expert witness (Sandy Ashley) with evidence of MF's false allegations and "guilt" [*id.* at 18-19]; (7) agreed to substitute a "favorable" witness who was unavailable to testify at trial with an individual having no personal knowledge of the events [*id.* at 21-22]; (8) filed a motion for new trial based upon jurors' knowledge of the previous trial without interviewing all of the jurors [*id.* at 23-24]; (9) agreed, during the sentencing phase, that Applicant's sentence should be increased [*id.* at 24].

In addition, Applicant alleges that appellate counsel (10) did not communicate with him [docket #3 at 32]; (11) filed Status Reports (during remand) omitting Applicant's complaints about remand counsel's representation and the remand court's delays [*id.* at 31-32]; and (12) refused to provide his notes and other material regarding the appeal to Applicant [*id.* at 33]. Finally, Applicant alleges that post-conviction counsel (13) failed to fully investigate the case before filing the November 2000 supplement Rule 35(c) motion [docket #3 at 37-38]; otherwise, Applicant refers generally to allegations made in a 25-page reply brief filed with the court of appeals.[11]  Upon review

---

[11]A habeas petitioner must point to specific errors or omissions by counsel to succeed on an ineffective assistance of counsel claim.  *Le v. Mullin*, 311 F.3d 1002, 1024 n.12; *see also Thomas*, 965 F.2d at 827 (noting that Court is not obligated to sift through a record to find support for a party's case).

of the record, the Court finds that Applicant raised sub-claims (1), (3), (5), (8), (9), (10), (11), (12) and (13) during post-conviction proceedings and, thus, such sub-claims are exhausted.

Though vague and prolix, I find Claim 2 primarily alleges that appellate counsel failed to notify Applicant of "perjury" located in the appellate record [docket #3 at 42-43], that the court of appeals during the direct appeal failed to appoint replacement counsel for Beeks and improperly dismissed Applicant's direct appeal [*id.* at 41], that the prosecution improperly used false testimony during the 1997 trial [*id.* at 44-47], and that the remand judge refused to hold hearings on Applicant's motions regarding ineffective assistance of counsel [*id.* at 42]. The allegations regarding appellate counsel are subsumed into Claim 1, sub-claim (10), and the allegations regarding the prosecution and remand judge were raised in post-conviction motions; therefore, they are exhausted and properly before this Court. However, any allegations regarding actions taken by the court of appeals on direct appeal were not raised during post-conviction proceedings and, therefore, are not exhausted.[12]

Claim 3 alleges that the remand judge's knowledge of, and refusal to act on, an alleged conflict involving post-conviction counsel (Ray) and her alleged inaction regarding Applicant's objections concerning ineffective assistance of appellate and post-conviction counsel violated his Fifth, Sixth, Eighth and Fourteenth Amendment (equal protection) rights. The Court construes Applicant's allegations regarding the remand judge's "inaction" as the same as those raised in Claim 2; however, with respect to the allegations regarding the remand judge's knowledge and inaction

---

[12]In any event, the claim is not raised properly in this action. "A claim of constitutional error that 'focuses only on the State's post-conviction remedy and not the judgment which provides the basis for [the Applicant's] incarceration . . . states no cognizable federal habeas claim.'" *See Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998).

regarding any alleged conflict caused by the friendship of remand counsel (Ray) and trial counsel (Jacobson), the Court finds that such allegations were not raised in post-conviction motions (nor specifically on appeal) and, thus, are not exhausted.

Finally, Claim 4 primarily involves matters that occurred during the 1997 trial and that were not raised in post-conviction proceedings; therefore, the majority of the claim is not exhausted. However, within his Claim 4, Applicant asserts that the court of appeals improperly "ignored" the issue raised in his Rule 35(a) post-conviction motion: "whether the trial court relied on unsupported, materially false and unreliable information to vindictively inflict a harsher punishment on the defendant at retrial."  Because this issue was raised during the post-conviction proceedings and addressed by the court of appeals, I find that the claim is exhausted.

To clarify, then, the following claims are exhausted: Claim 1, sub-claims (1), (3), (5), (8), (9), (10), (11), (12) and (13); Claim 2 to the extent that it alleges appellate counsel failed to notify Applicant of "perjury" located in the appellate record, that the prosecution improperly used false testimony during the 1997 trial, and that the remand judge refused to hold hearings on Applicant's motions regarding ineffective assistance of counsel; Claim 3 to the extent that it alleges the remand judge failed to act on Applicant's objections to ineffective assistance of counsel; and Claim 4 to the extent that it alleges the trial court relied on unsupported, materially false and unreliable information to vindictively inflict a harsher punishment on the defendant at retrial.

The following claims were not raised in state court proceedings and thus, are not exhausted: Claim 1, sub-claims (2), (4), (6) and (7); Claim 2 alleging that the court of appeals failed to appoint replacement counsel for Beeks and improperly dismissed Applicant's direct appeal; Claim 3 to the extent that it alleges the remand judge knew but failed to act regarding any alleged conflict caused

by the alleged friendship of remand counsel (Ray) and trial counsel (Jacobson); and all of Claim 4 except that stated above.

When a habeas application raises both exhausted and unexhausted claims, the application must be dismissed without prejudice for the applicant either to pursue first exhaustion of all claims in state court or to re-file raising only exhausted claims. *Pliler v. Ford*, 542 U.S. 225, 233 (2004). The exception to this requirement is when exhaustion would be futile. *Bear v. Boone*, 173 F.3d 782, 785 (10th Cir. 1999). Colorado's successive petition rule prevents the Applicant from raising new issues in a second Rule 35(c) motion. *See People v. Hubbard*, 519 P.2d 945, 948-49 (1974) (successive application rule). Further, the period of limitations for a Rule 35(c) motion has expired. Colo. Rev. Stat. § 16-5-402(1) (period of limitations for Rule 35(c) motions). Therefore, because Colorado's procedural rules now bar the Applicant from again appealing claims he has previously raised, and from raising new claims related to the criminal conviction at issue here, the unexhausted claims are technically exhausted, but procedurally barred from review in these federal habeas proceedings. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).

In situations such as this, federal courts apply the anticipatory bar. *Anderson v. Sirmons*, 476 F.3d 1131, 1140 (10th Cir. 2007) ("Anticipatory procedural bar occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it.") (citation and quotations omitted). The anticipatory bar of the state court prevents this Court from considering the Applicant's unexhausted claims under these allegations unless he can demonstrate "cause and prejudice" for the default, or demonstrate that a fundamental miscarriage of justice would result. *See Coleman*, 501 U.S. at 750. To demonstrate cause and actual prejudice, Applicant must show that efforts to raise the unexhausted

claim at earlier stages were "impeded" by "some objective factor external to the defense," for example, where "the factual or legal basis for a claim was not reasonably available to counsel" during earlier proceedings. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). The standard is an objective one, asking not what a particular attorney or *pro se* applicant actually knew but whether the claim was "reasonably available" upon diligent inquiry. *Id.* at 494, 496.

In this case, Applicant argues that he suffered actual prejudice as a result of ineffective assistance of counsel and, thus, any procedurally barred claims are excused. While a showing of actual prejudice resulting from ineffective counsel can excuse the procedural bar,[13] *see Johnson v. Champion*, 288 F.3d 1215, 1226 (10th Cir. 2002), Applicant makes no argument as to how his other claims are excused.

Thus, while Applicant may have presented some of the unexhausted claims (other than those for ineffective assistance of trial, appellate and post-conviction counsel) on direct appeal, he voluntarily dismissed the appeal even after he was warned that the appeal would be "dismissed with prejudice and appellant will never be able to file another direct appeal of his conviction and sentence." *See* docket #3-3 at 54-55. The Court finds that such voluntary dismissal results in no actual prejudice to Applicant and leaves such unexhausted claims procedurally barred.

To demonstrate a fundamental miscarriage of justice, Applicant must demonstrate that a constitutional error has probably resulted in the conviction of one who is actually innocent. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). To take advantage of the "actual innocence" prong, a habeas applicant must present evidence of innocence "so strong that a court cannot have

---

[13]The Court will proceed to address the merits of the ineffective assistance of counsel claims to determine whether they have merit and, if so, will consider whether they are procedurally barred. *See Cannon v. Mullin*, 383 F.3d 1152, 1159 (10th Cir. 2004).

20

confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error." *Cummings v. Sirmons*, 506 F.3d 1211, 1223 (10th Cir. 2007) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). "To be credible, such a claim requires [an applicant] to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.

With regard to the remaining unexhausted claims, other than his repeated conclusory statements that he is innocent of the charges against him, the Applicant has failed to articulate a constitutional error on the part of the courts resulting in his conviction, has failed to present "new reliable evidence," and has failed to demonstrate that he is actually innocent of the crimes of which he was convicted. *See McCleskey*, 499 U.S. at 494. Accordingly, Applicant has procedurally defaulted those portions of Claims 2, 3 and 4 identified above as unexhausted and the default cannot be excused. Therefore, because this Court cannot reach the merits of these claims, the Court recommends that they be dismissed.

## III.   Merits of Remaining Claims

As set forth above, the remaining claims are exhausted or will be considered on the merits to determine whether they are procedurally barred: Claim 1; Claim 2 to the extent that it alleges appellate counsel failed to notify Applicant of "perjury" located in the appellate record, that the prosecution improperly used false testimony during the 1997 trial, and that the remand judge refused to hold hearings on Applicant's motions regarding ineffective assistance of counsel; Claim 3 to the extent that it alleges the remand judge failed to act on Applicant's objections to ineffective assistance of counsel; and Claim 4 to the extent that it alleges the trial court relied on unsupported,

materially false and unreliable information to vindictively inflict a harsher punishment on the defendant at retrial.   For ease of reference, the Court will categorize the claims as follows: ineffective assistance of counsel, prosecutorial misconduct, judicial misconduct and vindictive sentence.

A.   Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).   That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)).   If a state court has already rejected a claim of ineffective assistance of counsel, a federal court may grant habeas relief if the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Yarborough*, 540 U.S. at 5 (quoting 28 U.S.C. § 2254(d)(1)).   Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable. *Wiggins*, 539 U.S. at 520-521; *Woodford v. Visciotti,* 537 U.S. 19, 24-25 (2002) (*per curiam*).

An ineffective assistance claim has two components: a petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687.   To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness," evaluated from counsel's perspective at the time a decision was made.   *Id.* at 688; *see also Bland v. Sirmons*, 459 F.3d 999, 1030 (10th Cir. 2006).   The Supreme Court has emphasized that "[t]he proper measure of attorney performance

22

remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521.

The Tenth Circuit "indulge[s] a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Patscheck v. Snodgrass*, 251 F. App'x 546, 548 (10th Cir. Oct. 17, 2007) (unpublished).   Moreover, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

A court need not consider whether counsel's performance was deficient, however, if the petitioner was not prejudiced by the alleged deficiency. *Bland*, 459 F.3d at 1030.  To establish prejudice, an applicant must show that there is a reasonable probability that, absent counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687; *see also Smith v. Workman*, 550 F.3d 1258, 1265 (10th Cir. 2008); *Cannon v. Mullin*, 383 F.3d 1152, 1159 (10th Cir. 2004) ("[t]o show prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the jury would have had a reasonable doubt respecting guilt") (citations omitted).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

With these principles in mind, the Court will analyze each claim in turn to determine whether Applicant received effective assistance of counsel under the Sixth Amendment.

1.      Trial Counsel - Steven Jacobson[14]

As set forth above, Applicant claims that, during his 1997 trial, Mr. Jacobson (1) "refused to produce exonerating evidence" at trial that minor child "M.F." made false allegations of sexual

_____

[14]The Court notes that, at the 1997 trial, two attorneys represented the Applicant - Mr. Jacobson and Yasmin Forouzandeh.  Although Ms. Forouzandeh substantially participated in the trial, the Applicant has alleged no claims against her.

assault against Applicant [docket #3 at 11-14]; (2) failed to investigate and produce minor child "MD" as a witness at trial, who would allegedly testify as to M.F.'s participation in "sexual games" [*id.* at 15-16]; (3)  failed to ask M.F. questions on cross examination that would "reveal his guilt" [*id.* at 16-17]; (4) failed to apprise the defense expert witness (Holida Wakefield) of M.F.'s false allegations and "guilt," and retained such expert knowing that she could be "attacked" successfully on cross examination [*id.* at 17-18]; (5) refused to impeach a prosecution witness (Polly Mahoney) with conflicting testimony from the 1986 trial [*id.* at 19-21]; (6) failed to impeach the prosecution expert witness (Sandy Ashley) with evidence of MF's false allegations and "guilt" [*id.* at 18-19]; (7) agreed to substitute a "favorable" witness who was unavailable to testify at trial with an individual having no personal knowledge of the events [*id.* at 21-22]; (8) filed a motion for new trial based upon jurors' knowledge of the previous trial without interviewing all of the jurors [*id.* at 23-24]; (9) agreed, during the sentencing phase, that Applicant's sentence should be increased [*id.* at 24].

As to the claims before it, the post-conviction court construed them as "conspiracy" claims and  summarily dismissed them  as "unsupported by the evidence."  Thereafter, the appellate court considered Applicant's ineffective assistance of counsel claims separate from any "conspiracy" contention and found that Applicant failed to demonstrate how any failures by trial counsel prejudiced him at trial.  In this action, the Court must determine whether the appellate court's adjudication was contrary to, or involved an unreasonable application of, clearly established federal law.

a.      Failure to Investigate

*Strickland* provides the relevant legal framework regarding a claim for failure to investigate

under the Sixth Amendment:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-91.  This sort of tactical decision to limit the scope of pre-trial investigation merits "a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691; *Wiggins,* 539 U.S. at 525 (noting that it may be reasonable for counsel to curtail his investigation if available information indicates that further inquiries would be fruitless).

In this case, Applicant contends that Mr. Jacobson was ineffective because he failed to investigate and produce a minor child witness, "M.D.," to testify regarding minor child M.F.'s[15] alleged participation in sexual games.  Applicant asserts that Mr. Jacobson attempted to contact M.D., but the child's father informed Mr. Jacobson that she lived in San Diego, California, and Mr. Jacobson allegedly told Applicant that he could not locate her.  While Applicant claims that Mr. Jacobson did nothing further to locate M.D., he provides no evidence of this claim and, more importantly, provides no information, other than speculation, demonstrating that further investigation into M.D.'s alleged knowledge of the facts would have changed the outcome of the trial.  Therefore, the Court recommends finding that Mr. Jacobson's attempt to investigate was not unreasonable and the appellate court's decision constituted a reasonable application of *Strickland*

---

[15]During the 1997 trial, the prosecution introduced "similar transaction" evidence that M.F. had been sexually assaulted by the Applicant.

and *Wiggins*.

b.    Failure to Produce Exonerating Evidence

In addition to Applicant's claim that Mr. Jacobson failed to investigate minor child M.D.'s knowledge of the facts, he claims that Mr. Jacobson failed to produce M.D. as a witness at trial.  The Court cannot say that this strategic decision fell outside "'the wide range of reasonable professional assistance,'" or that counsel was constitutionally ineffective in choosing not to call M.D. as a witness. *See Parker v. Scott,* 394 F.3d 1302, 1322-23 (10th Cir. 2005) (reviewing strategic decisions not to call certain witnesses) (quoting *Strickland,* 466 U.S. at 689); *see also Fox v. Ward,* 200 F.3d 1286, 1296 (10th Cir. 2000) ("For counsel's actions to rise to the level of constitutional ineffectiveness, his strategic decisions must have been completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy.") (quotation omitted).

Moreover, Applicant contends that Mr. Jacobson failed to produce evidence at trial that it was the minor child, M.F., who sexually assaulted the two younger children, L.T. and J.P., and not the Applicant.  The Applicant claims that his name, "Mack," was confused with M.F.'s first name, "Matt," when L.T. and J.P. made the allegations of sexual assault.  Applicant does not argue that Mr. Jacobson failed to investigate such evidence - only that he chose not to introduce the evidence at trial.  According to *Strickland*, however, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 466 U.S. at 690-91. Here, under the circumstances and based upon the evidence produced at trial, including, but not limited to, that L.T. referred to "Daddy" when making allegations of assault and that J.P. identified and demonstrated fear of the Applicant, the Court finds Mr. Jacobson's strategic choice reasonable. Thus, the Court recommends finding that the appellate court's decision was neither contrary to nor

an unreasonable application of *Strickland* and *Wiggins*.

        c.     Decision to Call "Harmful" Witness

Applicant claims that Mr. Jacobson's representation was ineffective because he retained and called at trial an expert witness, Holida Wakefield, knowing that she could be "attacked" successfully on cross examination.

Generally, the decision whether to call a witness rests within the sound discretion of trial counsel. *DeLozier v. Sirmons*, 531 F.3d 1306, 1324 (10th Cir. 2008). "For counsel's [decision] to rise to the level of constitutional ineffectiveness, the decision ... must have been 'completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.'" *Hatch v. Oklahoma,* 58 F.3d 1447, 1459 (10th Cir.1995), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) (quoting *United States v. Ortiz Oliveras,* 717 F.2d 1, 4 (1st Cir. 1983), *cert. denied,* 517 U.S. 1235 (1996)). The reasonableness of counsel's challenged conduct must be assessed at the time of the conduct. *Dever v. Kansas State Penitentiary,* 36 F.3d 1531, 1537 (10th Cir. 1994). "Neither hindsight nor success is the measure." *Id.* Moreover, "the decision of what witnesses to call is a tactical one within the trial counsel's discretion." *Minner v. Kerby,* 30 F.3d 1311, 1317 (10th Cir. 1994).

With these principles in mind, the Court concludes that Mr. Jacobson's decision to call Ms. Wakefield was a sound tactical decision, well within the range of reasonable attorney performance. Ms. Wakefield was admitted at trial as an expert in the field of false allegations of sexual abuse, which correlated directly with the defense strategy. Although, on cross examination, the prosecutor produced evidence of criticism of Ms. Wakefield's early work in the area, Mr. Jacobson produced evidence on re-direct that research in the area has since grown and "matured" and that Ms.

27

Wakefield's work has been not only criticized but also lauded.  Under these circumstances, the Court finds reasonable Mr. Jacobson's decision to call Ms. Wakefield as an expert witness at trial.  Thus, the Court recommends finding that the appellate court's decision was neither contrary to nor an unreasonable application of *Strickland* and *Wiggins*.

d.     Failure to Impeach

The Applicant argues that Mr. Jacobson's representation was ineffective because he failed to ask M.F. questions on cross examination that would "reveal his guilt," failed to impeach Sandy Ashley, prosecution expert witness who treated M.F., with evidence of M.F.'s false allegations and "guilt," and refused to impeach Polly Mahoney, prosecution witness who treated J.P., with conflicting testimony from the 1986 trial.

Counsel's decisions regarding how best to cross-examine witnesses presumptively arise from sound trial strategy.  *DeLozier*, 531 F.3d at 1326.  "The mere failure to cross-examine a witness does not necessarily require a finding of ineffective assistance of counsel."  *Church v. Sullivan*, 942 F.2d 1501, 1513 (10th Cir. 1991).  Applicant bears the burden of demonstrating how more effective cross examination might have changed the outcome of the trial.  *Id.*

The Applicant has failed to show that Mr. Jacobson's strategy was not sound.  Applicant contends that it was impossible that he could have sexually assaulted M.F. in the way that M.F. described the assaults, due to the Applicant's physical stature and the position of the bunkbed in M.F.'s room.  While Mr. Jacobson did not cross-examine M.F. regarding this evidence, he introduced it at trial through other witnesses and exhibits.  In addition, Applicant claims that, during the trial, M.F. testified that "he caught [J.P.] and [L.T.] naked under his bed located in the basement

28

of applicant's residence. [M.F.] admitted spanking [L.T.] and sending [J.P.] home" and that M.F. "renamed their Game of Private."   Applicant contends this testimony revealed M.F.'s guilt and involvement, but Mr. Jacobson stopped his examination and did not pursue the testimony.  However, upon review of the transcript, there was no such testimony by M.F.  *See* 1997 Trial Transcript, v. 18 at 73-78.  While M.F. admitted that he himself referred to the interaction between L.T. and J.P. as "private," the Applicant does not demonstrate how such admission constitutes "guilt" of sexual assault.  Nevertheless, the jury heard M.F.'s testimony and the Applicant has failed to demonstrate how pursuing the testimony further might have changed the outcome of the trial.

With regard to Sandy Ashley, the Applicant claims that Mr. Jacobson failed to impeach her testimony that M.F.'s nervous tick was the result of sexual abuse.  However, during Ms. Ashley's testimony regarding a "nervous tick which involved a head shake and some eye movements that became more pronounced when he talked about his allegations," the Court emphasized to the jury that Ms. Ashley was merely describing her observation of M.F. during a discussion of the alleged sexual assaults.  1997 Trial Transcript, v. 16 at 256-57.  In fact, the Court stated on the record that no one at trial had or "was going to opine that the twitch was evidence of a sexual assault."  1997 Trial Transcript, v. 19 at 196-97.   Thus, the Applicant has failed to show how more cross examination on this point would have changed the outcome of the trial.

Finally, with respect to Polly Mahoney, the Applicant appears to claim that Mr. Jacobson failed to impeach her regarding previous testimony that J.P.'s mother had actually asked leading questions of J.P. during Ms. Mahoney's interview of J.P.  However, Mr. Jacobson introduced such evidence of leading questions and suggestibility to both J.P. and L.T. and, in fact, made such evidence a primary focus of defense strategy.  Therefore, the Court finds Mr. Jacobson's strategy

29

sound.  The Applicant has failed to demonstrate that Mr. Jacobson's performance in this area was ineffective.

> e.      Substitution of Favorable Witness

The Applicant claims that Mr. Jacobson, during the 1997 trial, agreed to a prosecution's motion to replace Nancy Gary (prosecution witness), who was "suspiciously unavailable to testify," with Ms. Ginny May, "who testified during the 97 trial of applicant the 1985 results of Ms. Gary's interview and examination of L.T. and J.P. was credible."  The Applicant claims that Mr. Jacobson's agreement "benefited [sic] the people."

The Court is puzzled by the Applicant's claim.  At the 1997 trial, Nancy Gary, a medical examiner, testified as to her own findings regarding her examinations of J.P. and L.T.  *See* 1997 Trial Transcript, v. 18 at 214-265.  There was no testimony from an individual called "Ginny May." Therefore, the Court finds this claim frivolous and finds that Applicant has failed to demonstrate any ineffective performance by Mr. Jacobson regarding Nancy Gary.

> f.      Motion for New Trial

The Applicant argues that Mr. Jacobson filed a motion for new trial, based upon jurors' improper knowledge of the Applicant's previous trial and conviction, without having interviewed all of the jurors.  Applicant states that Mr. Jacobson told him Judge McLean approached Mr. Jacobson about a juror disclosing his knowledge of a previous conviction.  Such disclosure allegedly prompted Mr. Jacobson to investigate by interviewing the jurors.  In arguing Mr. Jacobson's ineffective assistance, the Applicant implies that his motion would have been granted had all of the jurors been interviewed and had Judge McLean been removed from hearing the motion.

The Court disagrees.  Upon review of the transcript of the hearing on the motion for new

trial, the Court finds no evidence supporting the Applicant's allegations.  The public defender's investigator, who testified for the defense, stated that he had interviewed only ten of the twelve jurors because two of the jurors refused to speak with him.  The investigator testified that he had a set of pre-drafted questions to ask each juror, some of which involved their perspectives on defense counsel's performance during the trial and some of which involved jury deliberations.  He stated that he was surprised to get something other than a negative answer from one of the jurors, Mr. Woyna, to his question regarding whether the Applicant's prior conviction had affected the jury deliberations.  *See* June 9, 1997 Hearing Transcript, v. 25 at 52.  Thus, there is nothing to indicate that Mr. Jacobson received this juror information from anyone but the investigator.

Moreover, the testimony revealed a discrepancy between the gentlemen's statements made during the investigator's interview of Mr. Woyna.  Mr. Jacobson and the prosecution offered evidence on either side of the factual issue, and Judge McLean made a decision to deny the motion based upon "the witnesses' knowledge, motive, means of knowledge, demeanor on the witness stand, the ability to observe on the part of the jury, the juror in this case, their strength of memory, the relationship each witness might have to either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case."  *Id.*, v. 25 at 92.

The Court finds that Mr. Jacobson performed effectively in investigating and filing the motion for new trial.  Consequently, the Court recommends finding that the appellate court's decision was neither contrary to nor an unreasonable application of *Strickland* and *Wiggins*.

g.      Sentencing Hearing

The Applicant claims that "Mr. Jacobson when asked by Judge McLean during the

sentencing hearing of applicant, if he could increase the sentence of applicant? Mr. Jacobson [sic] response was a resounding Yes!"

The Court has reviewed the transcript of the April 23, 1997 sentencing hearing before Judge McLean [*see* Hearing Transcript, v. 24] and has found no indication that the judge asked Mr. Jacobson any questions regarding increasing the sentence. Moreover, the only statements made by Mr. Jacobson concerning the length of the sentence to be imposed were his arguments that the length should be less than that imposed on the Applicant in 1986. Therefore, the Court finds the Applicant's claim frivolous and finds that the Applicant has failed to demonstrate any ineffective performance by Mr. Jacobson with respect to the sentencing hearing.

The Court recommends finding that the Applicant has failed to show a violation of his Sixth Amendment right to effective assistance of counsel at the 1997 trial. In addition, with respect to those claims that appear to be procedurally barred, the Court recommends finding that the Applicant has failed to demonstrate that such bar may be excused.

### 2.    Appellate Counsel - E. Ronald Beeks

Applicant contends that Mr. Beeks did not communicate with him; filed Status Reports with the appellate court (during remand) omitting Applicant's complaints about remand counsel's representation and the remand court's delays; refused to provide his notes and other material regarding the appeal to Applicant; and failed to notify Applicant of "perjury" located in the appellate record. Although raised in post-conviction proceedings and on appeal, the appellate court did not address Applicant's claims against Mr. Beeks. If the state court does not address a claim on the merits, this Court must review the claim *de novo* and the deferential standards in 28 U.S.C. § 2254(d) are not applicable. *See Gipson v. Jordan,* 376 F.3d 1193, 1196 (10th Cir. 2004).

32

Even if the alleged conduct of Mr. Beeks were to constitute "deficient performance" under *Strickland*, the Applicant has failed to demonstrate how any of the conduct has prejudiced him. *See McGee v. Higgins*, 568 F.3d 832, 839 (10th Cir. 2009) (it is not necessary to address both components of the ineffective assistance of counsel inquiry if the defendant makes an insufficient showing on one). The record reflects that Applicant voluntarily withdrew his direct appeal before an opening brief was due to be submitted.  Applicant complains that he was "forced" to dismiss the appeal because Mr. Beeks withdrew and the appellate court failed to appoint another attorney to represent him.  However, he does not claim that any of Mr. Beeks' actions or inactions caused him to be unable to represent himself through the direct appeal; in fact, Applicant has represented himself since May 2003 through post-conviction proceedings, an appeal, a petition for writ of certiorari and currently through the within habeas proceeding.  Although Applicant claims Mr. Beeks never provided his notes and/or the trial record to him to prepare for the appeal, the Applicant fails to show here why he was unable to request for himself a copy of the record and request additional time within which to file an opening brief.  In addition, Applicant claims that Mr. Beeks filed status reports with the appellate court omitting his complaints about remand counsel and the remand court; however, following Mr. Beeks' withdrawal, Applicant himself notified the appellate court of his concerns. *See* docket #3-3 at 47-53.  He fails to demonstrate how the appellate court's notification of such concerns sooner would have made a difference in the direct appeal proceedings. *See McGee*, 568 F.3d at 839.  Finally, to the extent that Applicant can demonstrate Mr. Beeks actually knew of any perjury appearing in the appellate record and failed to inform him of it, Applicant fails to show how his lack of knowledge prejudiced him in any way.

Because Applicant has demonstrated no prejudice as required by *Strickland*, the Court

33

recommends finding that Applicant cannot demonstrate that his appellate counsel was constitutionally deficient during the direct appeal of Applicant's 1997 conviction.

3.       Post-conviction Counsel - Rowe Stayton

The Applicant contends, among other things, that Mr. Stayton failed to fully investigate the case before filing a supplemental Rule 35(c) motion in November 2000.  However, as the Applicant acknowledges and the appellate court found, there is no constitutional right to an attorney in state post-conviction proceedings; consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel, whether retained or appointed, in such proceedings.  *See Coleman*, 501 U.S. at 752 (citing *Wainwright v. Torna*, 455 U.S. 586 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance of retained counsel)).  The habeas statute itself provides, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding under section 2254." 28 U.S.C. § 2254(i). Therefore, the Court recommends finding that the state court's adjudication of this issue was neither contrary to nor involved an unreasonable application of clearly established federal law.

B.       Prosecutorial Misconduct

Applicant contends that the prosecution knowingly and improperly used false testimony during the 1997 trial to seek his conviction.  In particular, Applicant alleges that the prosecution knew about inconsistent statements made by its witness M.F. (a minor child) regarding whether he and his mother had spoken to each other prior to the state's formal investigation [docket #3 at 44-45], and that the prosecution used as a demonstrative exhibit a soft police officer's hat during closing

argument when M.F. had testified that the hat was hard like a helmet [*id.* at 46].[16]   The appellate

court did not address the prosecutorial misconduct claim; therefore, this Court's review is *de novo.*

*See Le v. Mullin,* 311 F.3d 1002, 1013 (10th Cir. 2002) (where a prosecutorial misconduct claim is

raised on appeal but not addressed by the state court, the argument is reviewed *de novo*).

"Prosecutorial misconduct in a state court violates a defendant's right to a fair trial only if

the prosecutor's actions 'so infected the trial with unfairness as to make the resulting conviction a

denial of due process.'" *Hoxsie v. Kerby*, 108 F.3d 1239, 1243 (10th Cir. 1997) (quoting *Donnelly*

*v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

The due process guarantee of the Fourteenth Amendment is violated by a criminal conviction

obtained by presentation of known false evidence. *Douglas v. Workman*, 560 F.3d 1156, 1172 (10th

Cir. 2009).   "[D]eliberate deception of a court and jurors by the presentation of known false

evidence is incompatible with rudimentary demands of justice." *Giglio v. United States,* 405 U.S.

150, 153 (1972) (internal quotations omitted).   The petitioner "bears the burden of presenting

evidence to establish a *Giglio* violation." *Foster v. Ward,* 182 F.3d 1177, 1191 (10th Cir. 1999).   "A

conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be

set aside if there is any reasonable likelihood that the false testimony could have affected the

judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103 (1976) (citing *Giglio*, 405 U.S. at

153).

When analyzing prosecutorial misconduct claims, there is no requirement that a court "parse

---

[16]Applicant alleges generally that the prosecution knew about other numerous "lies and fabrications" apparently made by various witnesses during the 1997 trial, and he references a "Second Supplemental Petition for Rehearing with Attachments" attached at docket #3-4 at 1-10. However, the petition references no allegations of misconduct by the prosecution and, therefore, is not helpful to the Court's analysis.

the prosecutor's argument word by word in a vacuum." *Paxton v. Ward,* 199 F.3d 1197, 1217 (10th Cir. 1999).  Rather,

> [i]nquiry into fundamental fairness requires *examination of the entire proceedings,* including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase. Any cautionary steps - such as instructions to the jury - offered by the court to counteract improper remarks may also be considered. Counsel's failure to object to the comments, while not dispositive, is also relevant to a fundamental fairness assessment.

*Le,* 311 F.3d at 1013 (citations omitted & emphasis added).  The habeas court must consider the probable effect the prosecutor's statements would have on the jury's ability to judge the evidence fairly in light of the prosecutor's conduct.  *Tillman v. Cook,* 215 F.3d 1116, 1129 (10th Cir. 2000) (quoting *Moore v. Reynolds,* 153 F.3d 1086, 1113 (10th Cir. 1998)) (alteration omitted).  In making this assessment, a court must consider whether "the prosecutor's argument ... manipulate[d] or misstate[d]" the evidence, "whether it impacte[d] other specific rights of the accused such as the right to counsel or the right to remain silent," whether "the objectionable content was invited by or responsive to the opening summation of the defense," and whether "[t]he weight of the evidence against petitioner was heavy."  *Darden v. Wainwright,* 477 U.S. 168, 181-82 (1986).  It is not enough that the prosecutor's remarks were undesirable or even universally condemned. *Id.* at 181.

Here, the Applicant appears to claim that the prosecutor put M.F. on the witness stand knowing that his testimony regarding telephone calls with his mother during the initial investigation of the sexual assault claims was false.  However, there is no indication in the record that the prosecution had any such knowledge and, during the trial, Mr. Jacobson cross-examined M.F. regarding his testimony on the existence and number of telephone calls he had with his mother during that time period.  Thus, the jury was left to determine whether M.F.'s testimony was credible. The Court perceives no misconduct by the prosecution in this matter.

36

As for the Applicant's claim that the prosecutor used a soft police officer's hat rather than a hard police helmet during closing argument, the Court found no testimony by M.F. regarding whether the hat was hard or soft. The Applicant testified that he gave M.F. a hard police helmet "to play with," but M.F.'s mother testified that she recalled no such gift. Nevertheless, the Applicant testified that he owned both a soft hat and a hard helmet (actually, three helmets) [*see* 1997 Trial Transcript, v. 21 at 12]; therefore, there is no reasonable likelihood that the prosecutor's closing statements and presentation of a soft hat during closing argument affected the judgment of the jury. Thus, the Court recommends finding that Applicant has failed to demonstrate a denial of his rights to due process in this matter.

C.    Judicial Misconduct

Applicant contends that the post-conviction judge (Glowinsky) "did nothing" in response to his motions and refused to hold hearings on his ineffective assistance of counsel claims, thus delaying the limited remand proceedings and causing Applicant to dismiss his direct appeal [docket #3 at 49-51]. Applicant asserts that Judge Glowinsky's actions "reflect the type of treatment black defendants received during the Jim Crow era of these United States." *Id.* at 50. The appellate court did not address the judicial misconduct claim; therefore, this Court's review is *de novo*.

To demonstrate judicial bias, a defendant must show either: (1) actual bias; or (2) "that circumstances were such that an appearance of bias created a conclusive presumption of actual bias." *Fero v. Kerby,* 39 F.3d 1462, 1478 (10th Cir. 1994). Applicant offers no evidence of actual bias; he therefore must provide evidence demonstrating "an appearance of bias sufficient to override the presumption of honesty and integrity." *Id.* He cannot meet this burden. First, any delays were likely primarily caused by the fact that the Applicant retained four different attorneys during the

37

remand period.  It is undisputed that each attorney would be required to investigate and review the Applicant's years-long case, including several volumes and likely thousands of pages of documents. Second, Judge Glowinsky held hearings in 2001 regarding the Applicant's waiver of the attorney-client privilege, which was necessary for review of his ineffective assistance of counsel claims (*see* November 8, 2001 Hearing Transcript), and regarding his vindictive sentencing claim (*see* December 14, 2001 Hearing Transcript).  Shortly thereafter, on January 19, 2002, the Applicant filed a motion for conflict-free counsel alleging that his fourth remand attorney, Mr. Stayton, was ineffective.  In May 2002, the Court of Appeals vacated the remand and restored jurisdiction for the direct appeal to proceed.  The Court sees nothing in the record demonstrating that Judge Glowinsky's actions forced the Applicant to file a voluntary motion to dismiss his appeal. Therefore, the Court perceives no appearance of bias by Judge Glowinsky sufficient to override the presumption of her honesty and integrity in this matter.

Additionally, "[j]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States,* 510 U.S. 540, 555 (1994); (citing *United States v. Grinnell Corp.,* 384 U.S. 563, 583 (1966)).  Thus, the Court recommends finding that the Applicant's argument fails to demonstrate misconduct by Judge Glowinsky.

D.    <u>Vindictive Sentence</u>

The Applicant asserts that the court of appeals improperly "ignored" the issue raised in his Rule 35(a) post-conviction motion: "whether the trial court relied on unsupported, materially false and unreliable information to vindictively inflict a harsher punishment on the defendant at retrial." Docket #3 at 58.

The Tenth Circuit "afford[s] wide discretion to the state trial court's sentencing decision, and

challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." *Dennis v. Poppel,* 222 F.3d 1245, 1258 (10th Cir. 2000) (citations omitted). Indeed, review of a sentencing decision generally ends "once [the court] determine[s] the sentence is within the limitation set by statute." *Id.* To the extent the Applicant argues that his sentence violates Colorado state law, this claim is not cognizable in a federal habeas petition. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions").

The Applicant was convicted of one count of sexual assault on a child by one in a position of trust and one count of sexual assault on a child. The first crime is a Class 3 felony under Colorado law and carries a presumptive sentencing range of four to sixteen years. *See* Colo. Rev. Stat. § 18-1.3-401(1)(a)(IV). The trial court sentenced the Applicant to sixteen years' imprisonment on the first count of sexual assault by one in a position of trust and to lifetime probation to be served consecutively on the second count of sexual assault.[17] *See* Boulder District Court record, 1997 - 2003 Original Documents, at 412. The trial court acted within its discretion to sentence the Applicant to serve these counts; therefore, the Court recommends finding that the Applicant's sentence, which was within the limitations set by Colorado law, affords no basis for relief under 28 U.S.C. § 2254(d)(1).

---

[17]The applicant makes no specific complaint regarding the sentence for lifetime probation; nevertheless, the Court notes that state courts have discretion to determine the length of probation, except that the length of probation for a misdemeanor or petty offense may not exceed five years. *See* Colo. Rev. Stat. § 18-1.3-202(1) (exception not applicable here). Although this version of the probation statute took effect in 2002, it appears that the court's discretion was as broad in 1997 at the time of sentencing of the Applicant. *See People v. Brockelman*, 933 P.2d 1315, 1318 (Colo. 1997).

## **<u>CONCLUSION</u>**

In viewing the merits of the Applicant's claims, the Court finds that the Applicant is not entitled to relief in this Court under 28 U.S.C. § 2254.  Pursuant to Rule 8 of the rules governing section 2254 proceedings, no evidentiary hearing is required.

Based upon the foregoing analysis, and the entire record herein, I hereby RECOMMEND that the Application [<u>filed January 17, 2007; docket #3</u>] be **denied**, and that this case be dismissed with prejudice.


Dated at Denver, Colorado, this 6th day of January, 2010.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge